IN THE MATTER OF THE APPLICATION OF THE NEW YORK, LACKAWANNA AND WESTERN RAILWAY COMPANY, RESPONDENT, TO ACQUIRE A CROSSING OF THE BUFFALO, NEW YORK AND ERIE RAILROAD COMPANY, AND THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY, APPELLANTS, OVER THEIR RAILROAD IN THE TOWN OF ERWIN.

*Railroad crossing — the style and pattern of the "crossing frogs" must be definitely fixed by the report of the commissioners.*

Upon the application of the petitioner, which sought to acquire the right to cross the road of the appellants, commissioners were appointed to appraise the damages and fix and determine the line, grade and manner of the crossing. Their report provided, as to the manner of crossing, that it should be the duty of the petitioner to insert and place crossing frogs at the points of intersection of its tracks with the tracks of the appellants' road, " the said crossing frogs to be of a material, style and pattern approved by the engineers, both of the petitioner's and repliants' railroads, having charge of the division of the said railroads in which the said crossing is situated; and in case the said engineers do not agree in respect to such material, style or pattern, the undersigned commissioners will decide the question on the request of either engineer."

*Held*, that as the portion of the report relating to the material, style and pattern of the crossing frogs was too indefinite and uncertain to admit of enforcement by a judgment of the court, the report should be set aside.

APPEAL from the appraisal and report of commissioners appointed at Special Term to fix and determine the line or lines, grade or grades, and to fix the manner of the crossing of the railroad of the Buffalo, New York and Erie Railroad and the New York, Lake Erie and Western Railroad Company, by the railroad of the New York, Lackawanna and Western Railway Company, and the compensation to be paid therefor, and also from an order of the Special Term affirming such report.

The petitioner's road, as located, proposed a crossing of the appellants' road at grade. The commissioners in their report established the crossing at the place proposed by the petitioner and at grade. The ownership of the road proposed to be crossed was in the Buffalo, New York and Erie Railroad Company, but the same was operated by the New York, Lake Erie and Western Railroad Company, under a lease which transferred the management and gave possession of the entire route to the lessee for a number of years. The compensation awarded to the lessee for the additional expense incurred in operating its road in consequence of the crossing, was $5,000, and for the use and occupation of the land used by the petitioner, $350 was awarded to the lessee and ten dollars to the lessor.

*David C. Robinson*, for the appellants.

*J. McGuire*, for the respondent.

BARKER, J. :

The petitioner in locating its road proposed to cross the appellants' road at grade, making a curve at the place of crossing at an angle of about twenty-five degrees. The commissioners in their report adopted the place of crossing and did not change the curvature as established by the petitioner in its survey. The report sufficiently and satisfactorily provides for signals, their location and management. As to the manner of crossing, the report provides that, " it is and shall be the duty of the said, The New York, Lackawanna and Western Railway Company, to insert and place

crossing frogs at the points of intersection of its tracks with the tracks of the Buffalo, New York and Erie Railroad and the New York, Lake Erie and Western Railroad ; the said crossing frogs to be of a material, style and pattern approved by the engineers both of the petitioners and repliants' railroads, having charge of the division of the said railroads in which the said crossing is situated, and in case the said engineers do not agree in respect to such material, style or pattern, the undersigned commissioners will decide the question on the request of either engineer."

" The said petitioner shall forever keep and maintain the said frogs and crossing in good condition and repair, and renew the same whensoever necessary, all of which construction and repair shall be at the sole expense of the said last mentioned company, and the said company shall insert the said crossing frogs with as little hindrance of the said railroad as shall be compatible with the safety of the setting and construction and with good workmanship."

One of the objections made by the appellants to the confirmation of the report is, that the portion of the report relative to pattern and material of the frogs to be used is indefinite, uncertain, and that the same cannot be carried into execution as, if adopted, the judgment of the court.   By subdivision 6, section 28, of the general act under which these proceedings are conducted (chap. 140 of 1850 ; amended, chap. 583 of 1880), it is provided that " every company whose railroad is, or shall be hereafter intersected by any new railroad, shall unite with the owners of such new railroad in forming such intersections and connections and grant the facilities aforesaid, and if the two companies cannot agree upon the amount of compensation to be made therefor, or the line or lines, the grade or grades, points and manner of crossing and connections, the same shall be ascertained and determined by commissioners, one of whom must be a practical civil engineer, to be appointed by the courts,   *   *   *   and said commissioners shall have full power to determine whether the crossing or crossings of any railroad, before constructed, shall be beneath, at or above the existing grade of any such railroad, and upon the route designated upon the map of the company seeking the crossing required to be filed by section 22 of this act, or otherwise."

That portion of the report objected to, as not disposing of one of

the questions referred to the commissioners, demands serious consideration, as the question involved is one of practical importance to the appellants, and it is also one in which the public are largely interested. When intersecting railroads cross each other at grade, a piece of mechanism, called by engineers and railroad men a frog, must necessarily be used in securing a safe and convenient crossing. This is recognized by the commissioners and concurred in by all.

The objection made to this part of the report is, that it does not determine and pass upon a material and important question necessarily involved in determining the material of which the frogs are to be made, and the style and pattern of their construction are left undetermined. To this extent the manner of crossing is left undecided. Without frogs in some form, or some other appliance which will serve as a safe substitute, there cannot be any secure or proper crossing constructed. The officers and engineers representing the respective companies failed to agree on the mode and manner of making the crossing, and because of this disagreement these proceedings were instituted and the matter referred to the commissioners, and the style of the frogs and the material of which they are to be constructed were referred to the commissioners for their inspection and determination. The provision of the order remitting the question in controversy back to the engineers of the respective companies for their negotiation and agreement is an evasion by the commissioners of a duty imposed upon them by statute. After the petitioner invoked the aid of the law, and applied to the court for its interposition in establishing the mode and manner of crossing, the appellants were relieved from all obligations to attempt by negotiations with the petitioner to agree upon those matters over which they were in dispute. The appellant may now properly demand that the law and its officers shall settle and adjust the matter in controversy, and that the same be finally determined in these proceedings. Suppose the engineers, after an effort to agree upon the form of the frogs, fail to agree, then what is to be done to settle the controversy? The commissioners foresaw the situation the parties would be in in that event, and sought to provide for it by reserving to themselves the right to reconvene and resume the functions of their office and dis-

pose of the question. This they cannot legally do as the statute is now enacted. When the commissioners made and filed their report all their powers and functions were ended, unless the court, on a proper application, referred the matter back to them for further action.

The petitioner, on its own motion, and in opposition to the objections interposed by the appellants, secured a confirmation of the report in all respects, and the court has adopted the report of the commissioners as its own judgment.

In case of a disagreement between the engineers of the respective companies to settle the undetermined question between themselves, either, under the order, should apply to the commissioners to interpose; when, where and under what kind of notice will the commissioners reconvene? Will they be required to take further evidence on the subject if any is offered by either party? These queries are best answered by a statement of the law applicable to the case, that they have no power to reconvene and act as commissioners for any purpose. In disposing of the point we can say no more than this, the commissioners intentionally omitted to decide upon one of the important matters submitted to them in which both parties, as well as the public, are interested, and for that reason their report ought not to have been confirmed. If it had been provided in the report that one or the other of the parties should have the right and privilege of selecting the frogs to be used, leaving the choice of material and pattern to such party, that would have been, in a sense, the decision of the matter; but such a disposition would be highly objectionable for the reason that it would be establishing a mode and manner of crossing which, in essential particulars, would necessarily be without the sanction of the commissioners or the approval of the court.

Where both companies concur in the manner in which the crossing is to be made, then the law does not interfere. Of course the court cannot, in any case, intervene and indicate in detail the character of construction or the mechanical appliances to be used. But when the manner of crossing is to be determined in a judicial proceeding, for the reason that the parties cannot agree, no plan or crossing should be adopted and put in use, which the court, after such an examination of the subject as it is able to make from the

report of the commissioners and the evidence taken does not appear to be safe and proper.

It is the purpose of the statute that the report of the commissioners when duly affirmed shall have the same effect as a contract voluntarily entered into between the parties. The duties and acts enjoined upon each, by the report of the commissioners, are in the nature of covenants and may be enforced as such, and damages arising to either party in consequence of a breach of the same would be the basis of a civil action. It is clear, in our minds, that the appellants are right in demanding that the question left open and undetermined by the commissioners, be settled and determined in these proceedings. (*In the Matter of the L. and B. R. R. Co.*, 19 Hun, 38.)

The point is made by the respondent that the order of confirmation made at the Special Term is not appealable, and that this court has no power to review its action, or that of the commissioners. This court has heretofore held that the right of appeal exists and jurisdiction has been entertained in several cases. (19 Hun, 38, *supra*; S. C., 77 N. Y., 557.) We do not doubt but that the right of appeal is given by statute. This brings us to the question, whether the whole subject-matter shall be referred back to the commissioners, or only the question as to the form and pattern of the frogs which are to be used in constructing the crossing. It does not appear from the report that the commissioners in their own minds did determine that question, or that they gave it any consideration, and we cannot say how embarrassing and difficult the question may be to those who are competent to institute and determine the same. It is certain that it requires the skill and experience of a practical engineer to determine the question.

Conceding that we have the power to refer back particular questions for the further action of the commissioners, the one left undecided essentially pertains to the manner of crossing, and it may be that the commissioners will be unable to readily dispose of the question, and may find it involved in so much difficulty that a grade crossing would not be, in their judgment, safe and practicable, and would after further inspection deem it best to recommend an overhead crossing. The respondents' road crosses the existing road on a curve and that is a circumstance which will have some weight,

how much we do not pretend to say, in determining which is the safest way to make the crossing.

The order confirming the commissioners' report is reversed, and the subject-matter referred back to the same commissioners to proceed under the order of their appointment, and until the coming in and confirmation of their report the appellants are restrained and enjoined from interfering with the use of the crossing by the petitioner in the mode and manner in which it is now used by the petitioner with costs and disbursements of this appeal to the appellants.

HAIGHT and LEWIS, JJ., concurred; BRADLEY, J., not sitting.

So ordered.